# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT BINGER, | : | |
| | : | Case No. 2:17-cv-570 |
| Plaintiff, | : | |
| v. | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| ALPONT TRANSPORTATION, *et al*, | : | |
| | : | |
| Defendants – Third-Party Plaintiffs, | : | Magistrate Judge Kimberly A. Jolson |
| | : | |
| v. | : | |
| | : | |
| SELECT SIRES, INC., | : | |
| | : | |
| Third-Party Defendant. | : | |

## OPINION & ORDER

This matter comes before the Court on Third-Party Defendant Select Sires, Inc.'s Motion for Summary Judgment. (ECF No. 91). This Court heard oral argument on July 23, 2019. For the reasons below, Select Sires' Motion is **GRANTED**.

## I. BACKGROUND

On June 10, 2016, Plaintiff Robert Binger was a pedestrian on U.S. Route 42 when Defendant Randall E. Miller, driving a tractor trailer, hit him. (ECF No. 19 at ¶8). At the time, Miller was employed by Alpont (here, Defendant/Third-Party Plaintiffs), and Binger was employed by Select Sires (here, Third-Party Defendant). (ECF No. 19 at ¶3). Binger sued Alpont, alleging negligence. In response, Alpont sued Select Sires (ECF No. 20), alleging indemnity/contribution and *respondeat superior*.

At their campus in Union County, Ohio, Select Sires has facilities on either side of U.S. Route 42. Jeremiah Dingledine, colleague of Plaintiff and employee of Select Sires, left his

gloves in the facility across the road from the facility in which he was working that day.[1]
Because Dingledine was not insured on the company trucks, he asked Binger if Binger would drive him across the road for his gloves. (ECF No. 57 at 22:10-15) (hereafter "Dingledine deposition"). Dingledine got permission from their supervisor, Joel Boysel, and the two men set off. (Dingledine deposition at 21:7-12). Binger drove Dingledine across the road, from the east side of Rt. 42 to the west side. There, Dingledine collected his gloves, and Binger drove them back to the facility on the east side of Rt. 42, where they had started. (Dingledine deposition at 21-25).

The specifics of the subsequent events are disputed, but not materially. At some point on the return trip, from the west side to the east side, the hatch in the pickup fell down and the cargo in the back fell onto Rt. 42. (Dingledine deposition at 24-30). Binger stopped driving and the two men saw that the hatch was down and that the cargo – rollers for trash cans used by Select Sires – had fallen out. (Dingledine deposition at 34:11-23). The 55-gallon drums are used by Select Sires employees to distribute lime. (ECF No. 98, Ex. 1 at 257:8; ECF No. 97, Ex. 1 at 33:4-5; ECF No. 95, Ex. 1 at 64:5). As Dingledine observed in the rearview mirror, Binger got out of the truck and ran back toward Rt. 42 (Dingledine deposition at 34:11-23) where he was hit by Defendant Miller, driving a tractor-trailer in the north-bound lane of Rt. 42. Binger sustained

---

[1] The depositions use the proper names of the two Select Sires facilities (Kellgren and Hecker). However, the depositions also frequently describe "(indicating)" on the part of the deponent. *See e.g.* ECF No. 75 (Dingledine deposition) at 14:15-15:25 ("Q: What goes on over here? A: This is the Kellgren facility. (Indicating). Q. Okay. A: This is the Hecker facility. (Indicating)."). As a result, this Court could infer which facility is which from the context, but this Court was not presented with the complete and detailed map of the premises that was apparently put together during the depositions. As a result, and for simplicity, this Court will instead describe the buildings by the relative positions they occupy.
    The incident in question occurred in the north-bound lane of Rt. 42 which runs between the two Select Sires facilities. When Dingledine requested to retrieve his gloves, he and Plaintiff were in the facility on the east side of Rt. 42 – that is, the facility adjacent to the north-bound lane. The gloves were in the facility on the west side of Rt. 42 – that is, the facility adjacent to the south-bound lane. The two men took the truck from the east side to the west, and then crossed back to the east, and the collision occurred in the north-bound lane as they crossed back to the east.

2

"serious, permanent injuries including but not limited to a sever traumatic brain injury, facial disfigurement and scaring, functional loss of use of both arms and additional injuries [described in ¶16 of the Amended Complaint]." (ECF No. 19 at ¶9). Binger subsequently filed this lawsuit against Alpont, alleging negligence.

Alpont impleaded Select Sires as Third-Party Defendant. (ECF No. 20). This Court earlier issued an Opinion & Order denying Select Sires' Motion to Dismiss. (ECF No. 104). Now before this Court is Select Sires' Motion for Summary Judgment. (ECF No. 91). Alpont has filed a memorandum in opposition (ECF No. 99) and Select Sires has filed a reply. (ECF No. 102). This Motion is ripe for review.

At issue is whether Ohio's workers' compensation scheme immunizes Select Sires from Alpont's request for contribution. Select Sires argues that, as a complying employer, it is immune. O. R. C. § 4123.74. Alpont argues that workers' compensation is a scheme that governs the relationship of employees and *their* employers and does not speak to the employers' liability to third-parties. In the alternative, Alpont argues that Sires' interpretation of the workers' compensation scheme is unconstitutional as applied to third parties like Alpont.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." A fact is deemed material only if it "might affect the outcome of the lawsuit under the governing substantive law." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The nonmoving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris*

*Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The mere possibility of a factual dispute is insufficient to defeat a motion for summary judgment. *See Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992). Summary judgment is inappropriate, however, "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The necessary inquiry for this Court is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251-52). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient to survive the motion; there must be evidence on which the jury could reasonably find for the opposing party. *See Anderson*, 477 U.S. at 251; *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995). It is proper to enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where the nonmoving party has "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322 (quoting *Anderson*, 477 U.S. at 250).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013).

## III. ANALYSIS

### A. Immunity / Contribution

At issue in this case is whether, under Ohio law, a third-party may demand contribution from an employer who is a complying employer under Ohio's workers' compensation laws. Generally, such a third-party may not so demand and such an employer would be immune. *See e.g., Williams v. Ashland Chemical Co.*, 52 Ohio App. 2d 81, 89 (1976). This immunity, however, is conditioned on the employees' actions being in the scope of their employment as that phrase is used in the workers' compensation context. *See e.g. Williams*, 52 Ohio App. at 86.

The Ohio Revised Code provides that employers who comply with the workers' compensation scheme

> shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, received or contracted by any employee in the course of or arising out of his employment, or for any death resulting from such injury, occupational disease, or bodily condition occurring during the period covered by such premium so paid into the state insurance fund, or during the interval the employer is a self-insuring employer, whether or not such injury, occupational disease, bodily condition, or death is compensable under this chapter.

Ohio R.C. § 4123.74. Any determination of contribution or indemnification, as demanded here, requires a two-step inquiry: first, whether the employer is a complying employer within the meaning of O.R.C. § 4321.74; and second, whether the incident in question "arose out of" or was "in the course of" the employment.

To recover in worker's compensation, an employee must be both "in the course of" her employment *and* performing a duty that "ari[ses] out of" her employment; the "coverage formula" is in the conjunctive. *Fisher v. Mayfield*, 49 Ohio St. 3d 275, 277, 551 N.E. 2d. 1271, 1274 (1990). However, the "requirements for immunity are set forth in the disjunctive." *Maynard v. H.A.M Landscaping, Inc.,* 2006-Ohio-1724 ¶ 20. That is, a "complying employer has

immunity when either aspect of the statute is satisfied." *Id*.[2] Employer immunity includes protection "from actions for indemnification by third parties…who are or may be held liable to the employee for his workplace injury." *Davis v. Consol. Rail Corp.*, 2 Ohio App. 3d 475, 477, 442 N.E.2d 1310, 1312 (1981).

Ohio courts have read this immunity provision broadly. In *Perry*, the Court of Appeals allowed the trial court's order to stand after the trial court granted a judgment notwithstanding the verdict to the defendant employer who argued that their compliance with the workers' compensation scheme should overcome an adverse jury verdict. The *Perry* court explained the principle in broad terms, writing, "[this] section of the Ohio workers' compensation law provides that an employer who complies with the law is relieved from liability to anyone for damages arising from an injury to an employee sustained in the course of the employee's employment." *Perry v. S.S. Steel Processing Corp.*, 40 Ohio. App. 3d 198, 202 (1987). The *Perry* court continued: "[u]nder Ohio law, a third-party tortfeasor…has no standing to bring an indemnification claim against an employer for damages suffered by an employee in the course of or arising out of his employment where the employer is acting in compliance with the Ohio workers' compensation law." *Id*. *See also Williams*, 52 Ohio App. at 86 (noting that the legislature enacted the workers' compensation scheme to "provide against liability of the employer to anyone for damages arising from any injury…of an employee arising out of his employment."). A complying employer is liable to a third-party for claims arising out of injuries

---

[2] The difference between the conjunctive standard and the disjunctive standard means there is a gap where the employee is determined not to be eligible for compensation (because she cannot meet both elements) but the employer is nevertheless determined to be immune (because it meets one of the two elements). A determination that the employee is not eligible for compensation does not preclude the employer's immunity, in a further indication of how broadly courts read the statute to provide immunity to qualifying employers. *See Saunder v. Holzer Hosp. Found.*, 2008-Ohio-1032 ¶ 14.

6

to employees only where there has been express agreement between the two parties as to that liability. *Williams,* 52 Ohio App. 2d at 89; *Davis*, 2 Ohio App. 3d at 477.

Taken together, these cases frame the question at bar: was Plaintiff performing a task that "arose out of" his employment *or* was he "in the course of his employment" such that his employer, Select Sires – undoubtedly a complying employer (ECF No. 34, Ex. 1) – is immune to third-parties who request indemnification or contribution?

This Court concludes that there is no genuine dispute that Select Sires is immune to third-party requests for indemnity or contribution because Plaintiff's actions meet at least one part of the disjunctive test.

The tasks Plaintiff was performing immediately before the collision were as follows. Plaintiff, with the permission of his supervisor, drove a colleague in his employer's truck to the edge of his employer's property. The two of them then crossed the public highway and reentered his employer's property, where they came to a stop. Plaintiff waited with his employer's truck while Mr. Dingledine retrieved leather gloves that he wears on the job. The two men then got back into the employer's truck and drove from one Select Sires facility to another, again crossing the public highway. The collision occurred when Plaintiff ran towards Rt. 42 to retrieve his employer's property – rollers, for the trash cans that Select Sires employees use to distribute lime on the employer's property and for the employer's business – from where they had fallen on the public highway. The collision occurred during working hours while Plaintiff and Mr. Dingledine were "on the clock." (ECF No. 98, Ex. 1 at 252:13-253-1). The route the two of them took in the truck is a route traced by weekend employees with regularity: because fewer employees work on the weekends, they must travel back and forth more frequently between the two facilities. (ECF No. 97, Ex. 1 at 40:8-22; ECF No. 95, Ex. 1 at 32:19-33:5).

Thus, the two men were using the employer's property, on the employer's campus, with the employer's permission, to better facilitate one employee's chores. Quite plainly, this compels the conclusion that Plaintiff and Mr. Dingledine were performing a task "in the course of" their employment or that "arose out of" their employment.

This conclusion, that Plaintiff was in the scope of his employment, aligns with other decisions by Ohio courts in similar circumstances. In a case about whether an employee's injuries were compensable – that is, the narrower standard – one court held that an injury "is compensable if it is sustained by an employee while that employee engages in activity that is consistent with the contract for hire and logically related to the employer's business." *Ruckman v. Cubby Drilling, Inc*., 1998-Ohio-455, 81 Ohio St. 3d 117, 120 (citing *Kohlmayer v. Keller* (1970), 24 Ohio St. 2d 10, 12). Plaintiff's actions on June 10, 2016 were "consistent with the contract for hire and logically related to the employer's business" because he was using company property, company time, and company instrumentalities with the permission of his supervisor to perform a task that would improve the productivity of a colleague. It was also a task performed frequently by Plaintiff's colleagues.

The fact that the collision took place on a public highway and not on Select Sires property is not material because Ohio courts have found employees to be within the scope of their employment on public property – even where those employees were performing tasks more remote to their "contract for hire" than the tasks Plaintiff was performing here. One such employee was "returning following a lunch break" when she was "injured while crossing a public street that separates her job site from an employer-owned and -controlled parking lot…" *Brunney v. Connor*, 7 Ohio App. 3d 246, 247 (1982). The Court of Appeals held that Ms. Brunney was "injured in the course of and arising out of her employment." *Id*. By contrast,

Plaintiff was still on the clock and on duty and going from one of his employer's facilities to another facility.

Alpont makes a few other arguments that are also unpersuasive. Many of the cases Alpont cites discuss whether an employee qualifies for worker's compensation – where the employee must prove both prongs – rather than discussing an employer's immunity, which requires only one of the two prongs. However, the arguments are unavailing for further reasons.

First, Alpont argues that to be in the scope of their employment, an employee must be performing a required duty. (ECF No. 99 at 4). This argument fails for a few reasons. Alpont has not suggested any limiting principle or method to distinguish this fact pattern and, taken to its logical extension, this argument would wipe out the entire system of workers' compensation. Any accident or incident that occurs because of negligence would necessarily *not* be in the scope of employment under this definition, because that careless act could never be a required duty. Put another way, if an employee gets her hand stuck in her employer's machinery, she could never be determined to be in the scope of her employment because it was not a required duty that she get her hand stuck.

But more concretely, this interpretation of the requirements is directly at odds with the case law. To be eligible for compensation – that is, to meet the narrower standard – a employee "need not necessarily be injured in the actual performance of work for his employer." *Sebek v. Cleveland Graphite Bronze Co*. (1947), 148 Ohio St. 693. Rather, citing *Kohlmayer*, *supra*, the court concluded that the "injury is compensable if it is sustained" during an "activity that is consistent with the contract for hire and logically related to the employer's business." *Ruckman*, *supra*. If this is so for the stricter and narrower test of determining compensation, it must be so for the broader test of determining employer immunity.

9

Alpont next argues that the only reason the two men were driving the truck was because it would take a long time for them to get to the other facility on foot. Therefore, Alpont argues, the incident could not have occurred within "close proximity to Plaintiff's actual employment." (ECF No. 99 at 6). This argument also fails. Alpont is citing the *Lord* factors, which help a court determine whether there is a "sufficient causal connection to justify the injured party's right to participate in the Worker's Compensation Fund." *Lord v. Daugherty*, 66 Ohio St. 441, 444, 423 N.E. 2d 96, 98 (1981). As above, whether an injured employee is owed compensation is a different, narrower standard from the determination of whether an employer is immune to third-parties. Therefore, the *Lord* test is not on all fours with the question at bar.

But even assuming, *arguendo*, that this Court should be concerned with the *Lord* factors – proximity, degree of control by the employer over the scene of the accident, and the benefit the employer received from the injured employee's presence – Alpont still misapplies the test. Plaintiff did not cease to be "proximate" to his place of employment merely because the errand would take a stretch of time. Plaintiff and Mr. Dingledine would still be proximate to their employment even if they were walking from one facility to another because their walk would be on Select Sires property except for the brief interval in which they crossed Rt. 42. Indeed, the depositions establish that the weekend crews moved between facilities regularly. (ECF No. 97, Ex. 1 at 40:8-22; ECF No. 95, Ex. 1 at 32:19-33:5). If a person domiciled in the State of Ohio decides to walk across the state, she would still be proximate to her place of citizenship even if the walk would take her several days. The mere fact that the errand would take several minutes does not mean that Mr. Dingledine and Plaintiff were not "proximate" to their place of employment – and again, that assumes this Court should be applying the *Lord* factors in the first place.

Third, Alpont argues that Plaintiff "must prove that a risk 'specifically associated' with his employment caused that pain." (ECF No. 99 at 7) (citing *Dailey v. AutoZone, Inc.*, 2000 Ohio App. LEXIS 4574 at *7). Again, *Dailey* is a case about whether an employee may claim worker's compensation, not a case about whether an employer is immune. But, assuming *arguendo* that *Dailey* and similar cases are on point, this argument still fails. Plaintiff's efforts to retrieve the rollers from Rt. 42 could not "easily have occurred at home, or any other place other than work." *Dailey*, at *7. Instead, as detailed above, Plaintiff was driving a company vehicle on company property with his supervisor's permission, helping a colleague collect a part of the equipment he uses at work. When the rollers – also company property – fell on to the public highway, Plaintiff made an effort to retrieve this property. Unlike the back injury in *Dailey* or the arm injury in *Robinson v. Connor*, 1985 Ohio App. LEXIS 8265, which Alpont also cites, Plaintiff could only have found himself in this situation at work.

Finally, Alpont argues that Select Sires has failed to respond to the argument that Select Sires is liable for property damage, increased insurance premiums, attorney's fees, and other damages enumerated in Count II of Alpont's Third-Party Complaint. (ECF No. 99 at 3). Therefore, Alpont concludes, Select Sires has waived this argument. This conclusion misreads the Ohio Workers' Compensation statute. The relevant provision says that complying employers "*shall not be liable to respond in damages for any injury…*". O.R.C. § 4123.74 (emphasis added). Alpont's requests for fees and damages associated with increased premiums or property damages are, quite plainly, a request for Select Sires to "respond in damages for an[] injury." For the reasons above – and as articulated by Select Sires in their brief – Select Sires is immune to such requests. This conclusion accords with recent decisions by other courts in this district. *See Mitchell v. Michael Weinig, Inc.*, 2018 WL 4051826 (S.D. Ohio 2018) at *7 (quoting *Hehman v.*

11

*Maxim Crane Works*, 2010 WL 3002383 at *6) (finding that the immunity granted complying employers "extends to attorney fees and costs arising from damages," and that the complying employer cannot be compelled to pay "costs and attorneys' fees incurred in bringing [the] third-party claims against [it]"). Accordingly, the argument is not waived – but rather addressed through Select Sires's argument that it is a complying, and immune, employer – and Alpont's claim must fail.

For these reasons, the incident occurred while Plaintiff was in the course of his employment or performing a duty that arose out of his employment such that Select Sires is, by statute, immune from Alpont's requests for indemnity or contribution. As to this Count, Select Sires's Motion is **GRANTED**.

### B. Employer's Intentionally Tortious Acts

Alpont's second count is for *respondeat superior*, alleging that Select Sires is vicariously liable for the negligence of its employees or agents. As this Court discussed in its Opinion & Order denying Select Sires's Motion to Dismiss (ECF No. 104), this issue is unnecessarily complicated by the similarity in terminology between the workers' compensation standards ("scope of employment") and the tort liability standards ("scope of employment."). In §III.A, *supra*, where this Court used the phrase "scope of employment," it was with reference to the former. And this Court need not continue to complicate the question by using the phrase with reference to the tort standard because Select Sires's Motion is **GRANTED**.

Workers' compensation is not always the only remedy for an employee injured on the job. An employee may also sue their employer in tort. By definition, "an employer's intentional conduct does not arise out of employment," and so cannot "bestow upon employers immunity from civil liabilities for their intentional torts and an employee may resort to a civil suit for

damages." *Blankenship v. Cincinnati Milacron Chems. Inc.*, 69 Ohio App. 2d. 608, 613 (1982). In Ohio, an employee seeking to raise such a claim against her employer faces a high barrier, because Ohio "is one of only eight states that have judicially adopted a 'substantial certainty' standard for employer intentional torts." *Talik v. Fed. Marine Terminals, Inc.*, 2008-Ohio-937 at ¶ 32 (citing 6 Larson's Worker's Compensation Law (2007) 103-10, Section 103.04). Accordingly, the employee's claim will fail if she alleges "accidental injuries caused by the gross, wanton, willful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of a conscious and deliberate intent directed to the purpose of inflicting injury." *Kaminski v. Metal & Wire Prods. Co.*, 2010-Ohio-1027 at ¶ 100 (quoting Larson's (2008), Section 103.01).[3]

Mr. Binger could not, and does not, make such an allegation against his employer. There is nothing in the record to suggest that anyone at Select Sires had as their purpose the intent to inflict injury sufficient to "rob[] the injury of accidental character." Alpont argues that there is "a flood of evidence to the contrary," tending to suggest there *was* a deliberate intent to injure. (ECF No. 99 at 10). But then Alpont recites a series of allegations that do not support an accusation of deliberate intent to injure. *See e.g.* ECF No. 99 at 11 (arguing, "the truck was also maintained at Select Sires and thus, Select Sires had knowledge of the broken tailgate."). Because Mr. Binger could not maintain a claim against his employer for such an intentional tort, neither may the third-party Alpont maintain such a claim. If Select Sires lacked the intent to injure Mr. Binger or his colleagues, Select Sires certainly lacked the intent to injure Alpont, Mr.

---

[3] Larson's goes on to reason that even if the alleged conduct "includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering employees to perform an extremely dangerous job, wilfully [sic] failing to furnish a safe place to work, wilfully [sic] violating a safety statute, failing to protect employees from crime, refusing to respond to an employee's medical needs and restrictions, or withholding information about worksite hazards, the conduct still falls short of actual intention to injure that robs the injury of accidental character." (quoted in *Kaminski* ¶ 100, n. 16).

13

Miller, or anyone else happening across Rt. 42 that afternoon. Because there is no genuine dispute, Select Sires's Motion is granted.

### C. Constitutionality

Alpont also argues that the workers' compensation system is unconstitutional as applied. Workers' compensation is a bargained-for exchange, where the employer and the employee both surrender certain rights in exchange for certain privileges. Alpont argues that this system is unconstitutional as applied to third parties because third parties are not privy to this *quid pro quo* bargain.

Ohio courts have repeatedly found the employer immunity provision of the workers' compensation system to be constitutional, under both the Ohio and United States Constitutions. *See e.g. Davis*, 2 Ohio App. at 476; *Williams*, 52 Ohio App. at 86. When this Court sits in diversity, as it does here, it sits as an Ohio court, applying Ohio's law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). This Court is constrained to act as "only another court of the State." *Guar. Tr. Co. v. York,* 326 U.S. 99, 108 (1945). Following these other courts, and lacking any reason not to, this Court declines to find the employer immunity provision to be unconstitutional.

Alpont cites decisions by state courts in Florida and Minnesota for the proposition that the workers' compensation scheme is unconstitutional as applied to third parties. (ECF No. 99 at 17). Alpont indicates that these state courts found the immunity provision to be unconstitutional because it violated the third-party plaintiff's right to access courts and to equal protection. *See Carson v. Smogard,* 215 N.W. 2d. 615 (Minn. 1974); *Sunspan Eng'r Constr. Co. v. Spring-Lock Scafolding Co.*, 310 So.2d 4 (Fla. 1975). Alpont argues that because those state court decisions were based on both the United States and the state Constitutions, this Court could conclude that

14

Ohio's immunity provision similarly violates the United States Constitution. Ordinarily, this Court would not find decisions by courts in other states interpreting their state constitutions to be especially persuasive, to say nothing of precedential. In addition, as a threshold matter, this Court would first be required to discern similarities between the Ohio workers' compensation scheme and immunity provision and the schemes in Florida and Minnesota which those courts reviewed. Discerning the nuances of those schemes and their similarities, or differences, to the Ohio program is beyond the purview of this Court, especially when – as here – this Court sits in diversity.

This Court is constrained to follow the lead of Ohio courts on this question. Alpont cites no authority to indicate that Ohio courts have any doubt about the constitutionality of the workers' compensation scheme or the immunity provision. Indeed, to the contrary, the cases indicate that courts routinely give the immunity provision an expansive reading. Acting "only another court of the State," this Court therefore declines to find the scheme unconstitutional as applied to third parties.

## IV. CONCLUSION

For the foregoing reasons, and because there is no genuine dispute of material fact, Third-Party Defendant Select Sires's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

>                          s/Algenon L. Marbley
>                          **ALGENON L. MARBLEY**
>                          **United States District Judge**

**Dated: July 25, 2019**